IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Case No. 1:22-cv-03832

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

       Plaintiff,

v.

193 CORP. d/b/a BELLA LUKES,

       Defendant.

_____

## MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant 193 Corp. d/b/a Bella Lukes ("Defendant"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.      On July 25, 2022, Plaintiff filed its Complaint in this action. The Complaint contains a single cause of action for copyright infringement against Defendant. See D.E. 1.

2.      On August 3, 2022, Defendant was served with a copy of the Summons and Complaint in this action. See D.E. 5.

3.      On September 1, 2022 (following expiration of Defendant's response deadline), Plaintiff filed its Request for Clerk's Certificate of Entry of Default. See D.E. 7.

4.      On September 1, 2022, the Clerk entered a Clerk's Default [D.E. 8] against Defendant.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

**I.      Plaintiff's Business and History**[2]

5.      Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

6.      Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

7.      Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

8.      Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

9.      Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used).  Generally stated, the bulk of Plaintiff's subscribers

---

[1]      "[I]n the case of a default, this circuit follows the rule that the well-pleaded allegations of the complaint relating to liability are taken as true." FTC v. 6654916 Can., Inc., No. 09 C 3159, 2010 U.S. Dist. LEXIS 73882, at *13 (N.D. Ill. July 21, 2010) (quoting Merrill Lynch Mortg. Corp. v. Narayan, 908 F.2d 246, 253 (7th Cir. 1990)); Bricklayers Local #8 of Ill. & Emplrs. Pension Plan v. Little Grassy Constr., Inc., No. 19-cv-874-SMY, 2020 U.S. Dist. LEXIS 102831, at *3 (S.D. Ill. June 11, 2020) ("When a defendant is found in default, all factual allegations in the Complaint are deemed admitted and not subject to challenge."); Lm Gen. Ins. Co. v. Pacheco, No. 21-CV-572-SMY, 2022 U.S. Dist. LEXIS 62623, at *2 (S.D. Ill. Apr. 4, 2022) ("The well-pleaded allegations of a complaint relating to liability are taken as true upon default.").

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the September 14, 2022 Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

10.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

11.     This lawsuit concerns one (1) photograph titled "ChickenWingHot004_ADL" (the "Work") owned by Plaintiff for which Plaintiff serves as the licensing agent.  The Work is available for license on the above-stated terms.

12.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 26, 2017 and was assigned Registration No. VA 2-046-824.  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

## III.     Defendant's Unlawful Activities

13.     Defendant owns and operates a restaurant that serves Italian beef sandwiches, a great variety of Vienna beef hotdogs, salads, pastas, and hand carved Gyros. It also offers catering services.

14.     Defendant advertises/markets its business primarily through its website (http://www.bellalukes.net/welcome.htmlhttp://www.savelandsupermarket.com/), social media (e.g. https://www.facebook.com/bellalukesIL/), and other forms of advertising.

15. On a date prior to Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its website (at http://www.bellalukes.net/photos.html and at http://www.bellalukes.net/home2.html) in connection with the marketing of its restaurant:



16. A true and correct copy of screenshots of Defendant's website, displaying the

4

copyrighted Work, are attached to the Complaint as Exhibit B thereto.

17.     Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.

18.     Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.

19.     Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

20.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

21.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

22.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

October 2021.

23.     Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one (1) infringement notice to Defendant to notify it of the impermissible use.  Defendant ignored the notice(s) and did not otherwise respond to Plaintiff.

24.     Ultimately, Plaintiff was forced to retain undersigned counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) one (1) infringement notice to Defendant to notify it of the impermissible use.  Shortly thereafter, an attorney purporting to represent Defendant (John Klytta, Esq.) corresponded with undersigned counsel to discuss the matter and potentially negotiate a resolution. Undersigned counsel emailed Mr. Klytta at least three (3) times and attempted to call him. After months of going back and forth with Mr. Klytta, negotiation discussions broke down and Plaintiff had little choice but to escalate this matter to a lawsuit.

## ARGUMENT

### I.     Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The basic effect of an entry of default is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" VLM Food Trading Int'l, Inc. v. Ill. Trading Co., 811 F.3d 247, 255 (7th Cir. 2016) (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Sawyer v. Columbia Coll., No. 09 C 6962, 2013 U.S. Dist. LEXIS 19860, at *4 (N.D. Ill. Feb. 14, 2013) ("In essence, the facts

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

alleged in the complaint are deemed admitted and may not later be contested absent an order

vacating the order of default.").

The Court must review the sufficiency of the complaint before determining if a moving

party is entitled to default judgment. See Klinger v. Conan Doyle Estate, Ltd., 988 F. Supp. 2d

879, n.3 (N.D. Ill. 2013) (referencing Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994)). "While

a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its

entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate

amount of damages and enter final judgment in that amount. See Mid Cent. Operating Eng'rs

Health & Welfare Fund v. Zoie, LLC, No. 1:19-cv-1150, 2019 U.S. Dist. LEXIS 131230, at *2

(C.D. Ill. Aug. 6, 2019). An evidentiary hearing on damages is not required by Rule 55, and it is

within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2);

Norfolk & W. Ry. v. Cent. States Trucking Co., No. 97 C 3642, 1998 U.S. Dist. LEXIS 509, at *6

(N.D. Ill. Jan. 7, 1998).

**II.      Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement**

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the

exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§

106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer

of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright

infringement has two elements: '(1) ownership of a valid copyright, and (2) copying of constituent

elements of the work that are original.'" FameFlynet, Inc. v. Jasmine Enters., 344 F. Supp. 3d 906,

910–11 (N.D. Ill. 2018) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361,

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

(1991)).

### 1. Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "If the plaintiff produces a certificate of copyright, a rebuttable presumption of validity exists and the burden shifts to the defendant to prove why the claim of copyright is invalid." Marobie-Fl., Inc. v. Nat'l Ass'n of Fire Equip. Distribs., No. 96 C 2966, 2000 U.S. Dist. LEXIS 11022, at *9–10 (N.D. Ill. July 28, 2000). Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2. Defendant Copied the Work

The copying element of an infringement claim has two components. See CRC Press, LLC v. Wolfram Research, Inc., 149 F. Supp. 2d 500 (C.D. Ill. 2000). "The second element of copying can be divided into two subissues: (1) 'whether the alleged copier had access to the work that he is claimed to have copied;' and (2) whether the copied work is substantially similar to the copyrighted work." Id. at 505.

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

### III.     Plaintiff's Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement."[3] "Actual damages are 'usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.'" Bell v. Taylor, 827 F.3d 699 (7th Cir. 2016) (quoting McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003)).

"In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Epic Sys. Corp. v. Attachmate Corp., No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572, at *4 (W.D. Wis. July 8, 2016). "In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" Id. at *4–5 (quoting McRoberts Software, Inc., 329 F.3d at 566).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff generally does not license individual photographs as doing so greatly diminishes the value

---

[3]     Because the Wayback Machine (https://web.archive.org/web/20220000000000*/http://www.bellalukes.net/photos.html) shows that the Work was published to Defendant's website at least as far back as 2015 (pre-registration), Plaintiff is not entitled to statutory damages under 17 U.S.C. § 504.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

digital media advertising.

As discussed above, Plaintiff first discovered Defendant's infringement of the Work in approximately October 2021 (at which time the Work was published on Defendant's website). By use of the Wayback Machine (an internet archive system), Defendant has published/displayed the Work on its website since at least December 2015. However, Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and removed from Defendant's website. However, because the Work was published since at least December 2015, a minimum 7-year license for the Work would apply.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 annual license was found to be a useful tool to properly calculate Plaintiff's actual damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, Case No. 21-82129-cv-Middlebrooks/Matthewman.

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that

would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

Given the above, Plaintiff believes that the fairest beginning measure of its actual damages, in this case, is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the maximum years of use that copyright will permit. As a result, Defendant would owe Plaintiff at least three (3) years of licensing fees in a total amount of **$35,964.00** ($11,988 x 3 years of use).[4]

## IV.     Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. "Section 502(a) of the Copyright Act specifically provides for injunctive relief. 17 U.S.C. § 502(a)." Virgin Records Am. Inc. v. Johnson, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006). "Injunctions are regularly issued pursuant to section 502 because 'the public interest is the interest in upholding copyright protections.'" Id. (quoting Autoscale, Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1499 (10th Cir.), *cert. denied*, 510 U.S. 916, 114 S. Ct. 307, 126 L. Ed. 2d 254 (1993)). "Moreover, it is not uncommon for courts to issue injunctions as

---

[4]      While the defendant has infringed on the Plaintiff's copyright protected work for presumably the past seven years, infringement only has a three-year lookback period. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 677 (2014) ("a successful plaintiff can gain retrospective relief only three years back from the time of suit.").

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

part of default judgments." Id.; See Johnson v. Kakvand, 192 F.3d 656, (7th Cir. 1999) (affirming default judgment that included injunction).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff $35,964.00 for Defendant's infringement of the Work, award Plaintiff its costs (as set forth in the attached Bill of Costs), award Plaintiff prejudgment interest, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper. A proposed order is filed herewith.

Dated: September 14, 2022.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza_____
     Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza
Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228