IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Case No. 1:22-cv-03832

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

193 CORP. d/b/a BELLA LUKES,

    Defendant.

## FINAL JUDGMENT

**THIS CAUSE** is before the Court upon plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") Motion for Default Final Judgment (the "Motion") [10]. The Court has considered the Motion, has noted the Clerk's default against defendant 193 Corp. d/b/a Bella Lukes ("Defendant"), and is otherwise advised in the premises.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has met its burden of showing that it is entitled to a final default judgment as to Defendant. Plaintiff has also met its burden of showing that it is entitled to permanent injunctive relief against Defendant as specified herein.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

**I.    Findings of Fact[1]**

    1.    Plaintiff is in the business of licensing high-end, professional photographs for the

---

[1] "A court may adopt verbatim a party's findings as its own, even though it is preferred that a court independently make its own findings. Eirhart v. Libbey-Owens-Ford Co., 996 F.2d 837, 841–42 (7th Cir. 1993). In this case, the Court has independently analyzed the evidence presented and has adopted only those findings which the Court has independently deemed appropriate under the circumstances.

food industry.

2. Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

3. Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

4. Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

5. Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used). Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

6. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

7. This lawsuit concerns one (1) photograph titled "ChickenWingHot004_ADL" (the

"<u>Work</u>") owned by Plaintiff for which Plaintiff serves as the licensing agent. The Work is available for license on the above-stated terms.

8. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 26, 2017 and was assigned Registration No. VA 2-046-824. A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

9. Defendant owns and operates a restaurant that serves Italian beef sandwiches, a great variety of Vienna beef hotdogs, salads, pastas, and hand carved Gyros. It also offers catering services.

10. On a date prior to Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its website (at http://www.bellalukes.net/photos.html and at http://www.bellalukes.net/home2.html) in connection with the marketing of its restaurant:





11. A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, are attached to the Complaint as Exhibit B thereto.

12. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.

13. Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.

14. Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff

employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

15. Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

16. Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately October 2021.

17. Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one (1) infringement notice to Defendant to notify it of the impermissible use. Defendant ignored the notice(s) and did not otherwise respond to Plaintiff.

18. Ultimately, Plaintiff was forced to retain undersigned counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) one (1) infringement notice to Defendant to notify it of the impermissible use. Shortly thereafter, an attorney purporting to represent Defendant (John Klytta, Esq.) corresponded with undersigned counsel to discuss the matter and potentially negotiate a resolution. Undersigned counsel emailed Mr. Klytta at least three (3) times and attempted to call him. After months of going back and forth with Mr. Klytta, negotiation discussions broke down and Plaintiff had little choice but to escalate this matter to a lawsuit.

**II.** **Conclusions of Law**

    **A.** *Applicable Legal Standards*

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The basic effect of an entry of default is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" VLM Food Trading Int'l, Inc. v. Ill. Trading Co., 811 F.3d 247, 255 (7th Cir. 2016) (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Sawyer v. Columbia Coll., No. 09 C 6962, 2013 U.S. Dist. LEXIS 19860, at *4 (N.D. Ill. Feb. 14, 2013) ("In essence, the facts alleged in the complaint are deemed admitted and may not later be contested absent an order vacating the order of default.").

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. See Klinger v. Conan Doyle Estate, Ltd., 988 F. Supp. 2d 879, n.3 (N.D. Ill. 2013) (referencing Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Mid Cent. Operating Eng'rs Health & Welfare Fund v. Zoie, LLC, No. 1:19-cv-1150, 2019 U.S. Dist. LEXIS 131230, at *2 (C.D. Ill. Aug. 6, 2019). An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2);

Norfolk & W. Ry. v. Cent. States Trucking Co., No. 97 C 3642, 1998 U.S. Dist. LEXIS 509, at *6 (N.D. Ill. Jan. 7, 1998).

  B. *Copyright Infringement*

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement has two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" FameFlynet, Inc. v. Jasmine Enters., 344 F. Supp. 3d 906, 910–11 (N.D. Ill. 2018) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, (1991)).

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "If the plaintiff produces a certificate of copyright, a rebuttable presumption of validity exists and the burden shifts to the defendant to prove why the claim of copyright is invalid." Marobie-Fl., Inc. v. Nat'l Ass'n of Fire Equip. Distribs., No. 96 C 2966, 2000 U.S. Dist. LEXIS 11022, at *9–10 (N.D. Ill. July 28, 2000). Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

To satisfy the second element of copyright infringement, the copyright owner must demonstrate "(1) 'whether the alleged copier had access to the work that he is claimed to have copied;' and (2) whether the copied work is substantially similar to the copyrighted work." CRC Press, LLC v. Wolfram Research, Inc., 149 F. Supp. 2d 500, 505 (C.D. Ill. 2000). A plaintiff may

show actual copying through direct or indirect evidence. See Design Basics, LLC v. Signature Constr., Inc., 994 F.3d 879, 887 (7th Cir. 2021). Copying may be proven indirectly by showing the "(1) the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an opportunity to copy); and (2) evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying in fact occurred)." Id. To meet the element of substantial similarity, the Seventh Circuit "uses the 'ordinary observer' test for unlawful appropriation: 'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protect[a]ble expression by taking material of substance and value.'" Id. at 888. (quoting Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 508-09 (7th Cir. 1994)).

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted Work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

C. **Plaintiff's Damages**

1. **Actual Damages**

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement."[2] "Actual damages are 'usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the

---

[2] Because the Wayback Machine (https://web.archive.org/web/20220000000000*/http://www.bellalukes.net/photos.html) shows that the Work was published to Defendant's website at least as far back as 2015 (pre-registration), Plaintiff is not entitled to statutory damages under 17 U.S.C. § 504.

infringement or by the value of the use of the copyrighted work to the infringer.'" Bell v. Taylor, 827 F.3d 699 (7th Cir. 2016) (quoting McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003)).

"In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Epic Sys. Corp. v. Attachmate Corp., No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572, at *4 (W.D. Wis. July 8, 2016). "In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" Id. at *4–5 (quoting McRoberts Software, Inc., 329 F.3d at 566).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the

copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

As discussed above, Plaintiff first discovered Defendant's infringement of the Work in approximately October 2021 (at which time the Work was published on Defendant's website). By use of the Wayback Machine (an internet archive system), Defendant has published/displayed the Work on its website since at least December 2015. However, Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and removed from

Defendant's website. However, because the Work was published since at least December 2015, a minimum 7-year license for the Work would apply.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 annual license was found to be a useful tool to properly calculate Plaintiff's actual damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, Case No. 21-82129-cv-Middlebrooks/Matthewman.

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

Given the above, Plaintiff believes that the fairest beginning measure of its actual damages, in this case, is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the maximum years of use that copyright will permit. As a result, Defendant would owe Plaintiff at least three (3) years of licensing fees in a total amount of **$35,964.00** ($11,988 x 3 years of use).[3]

### D. *Permanent Injunction*

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

Here, Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's work if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for its own commercial purposes without paying any fee at all.

---

[3] While the defendant has infringed on the Plaintiff's copyright protected work for presumably the past seven years, infringement only has a three-year lookback period. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 677 (2014) ("a successful plaintiff can gain retrospective relief only three years back from the time of suit.").

Accordingly, this Court will enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

### III. Conclusion

Judgment is hereby entered in favor of Plaintiff, Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. and against defendant 193 Corp. d/b/a Bella Lukes as follows:

1. Plaintiff shall recover from Defendant the principal sum of **$36,491.00** for which let execution issue. The foregoing sum consists of $35,964.00 (actual damages for copyright infringement) and $527.00 (costs).

2. Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant are permanently enjoined from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic

form, of any copyrighted photograph owned by Plaintiff.

**ORDERED**

Robert W. Gettleman
United States District Court Judge

**DATE**: September 21, 2022